UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TURF NATION, INC.                                                      **DECISION**
                                        Plaintiff,                          **and**
        v.                                                                **ORDER**

PLATTE RIVER INSURANCE COMPANY,                          **17-CV-534V(F)**

                                        Defendant.
_____

APPEARANCES:           GETMAN & BIRYLA, LLP
                       Attorneys for Plaintiff
                       SETH L. HIBBERT, of Counsel
                       800 Rand Building
                       14 Lafayette Square
                       Buffalo, New York 14203

                       ALSTON & BIRD LLP
                       Attorneys for Plaintiff
                       THOMAS P. CLINKSCALES,
                       WILLIAM S. SUGDEN, of Counsel
                       1201 West Peachtree Street NW
                       Atlanta, Georgia  30309-3424

                       MCELROY DEUTSCH MULVANEY &CARPENTER, LLP
                       Attorneys for Defendant
                       THEODORE M. BAUM, of Counsel
                       820 Bausch & Lomb Place
                       Rochester, New York  14604


        In this action to enforce a performance bond, commenced on May 12, 2017, in

New York Supreme Court, Erie County and removed to this court, Defendant moves, by

papers filed September 8, 2017 (Dkt. 14), to stay further proceedings ("Defendant's

motion").  Specifically, Plaintiff seeks payment from Defendant, a surety, for

approximately $145,000 representing an unpaid balance due for artificial turf

manufactured by Plaintiff and ordered by UBU Sports, Inc., a non-party ("UBU"), as

general contractor and Defendant's principal, for a recently constructed professional football practice field under a public works contract awarded to UBU by Erie County as owner of the facility and the obligee on Defendant's surety bond ("the Erie County Project"). Plaintiff is a leading supplier of high quality artificial turf for NFL and high school sports facilities throughout the United States and foreign countries; UBU is a major installer of Plaintiff's turf product in such facilities. Plaintiff opposed Defendant's motion by filing, on September 21, 2017, its Memorandum of Law In Opposition (Dkt. 16); Defendant's reply was filed October 12, 2017 (Dkt. 17). Oral argument was deemed unnecessary.

The basis for Defendant's motion is Plaintiff's action against UBU pending in Superior Court of Delaware ("the Delaware Court Action") which Plaintiff commenced on January 12, 2017, approximately four months before the instant action, as a class action on behalf of unpaid materialmen to recover approximately $369,000 for artificial turf sold to UBU for installation at two facilities located in New York State including the Erie County Project (the other is a high school in Philadelphia, N.Y.) ("the New York State Projects"). In the Delaware Court Action, Plaintiff also seeks payment against UBU for approximately $3 million, now known as Artificial Turf Sports Field, Inc., for unpaid shipments of Plaintiff's turf for 20 projects, similar to the Erie County Project, including the New York State Projects, located within the United States during the period May – November 2016. The Delaware Court Action also includes claims against UBU's former president for diversion of trust funds subject to state trust fund statutes, *e.g.*, N.Y. Lien Law §§ 70-71[4], representing payments to UBU from the owners of the various projects which UBU was obligated to pay to Plaintiff as a supplier for the Erie County Project and

other projects. Plaintiff also alleges that Erie County has made partial payments on its contract with UBU. In response to the Delaware Court Action, UBU asserts that Plaintiff and UBU conducted business with respect to the projects under a revolving $5 million credit line ("the Supply Agreement") and that UBU has, during the period covering UBU work on the Erie County Project, paid millions of dollars to Plaintiff to cover balances on the revolving credit facility between Plaintiff and UBU, including for the Erie County Project, but that Plaintiff failed to properly credit such payments against any of Plaintiff's alleged outstanding invoices, instead crediting such payments against invoices for projects for which Plaintiff could not seek payment from a bonding company such as Defendant in this action, or other sources for payment such as guarantors, or by enforcement of a mechanics or supplier lien. Based on UBU's assertion that contrary to its directions, Plaintiff failed to credit UBU's repayments on either a chronological or by invoice basis UBU requested the court direct an accounting of UBU's payments to Plaintiff during the relevant period. As a result of the Supply Agreement between Plaintiff and UBU, UBU also contends Plaintiff waived any right to enforce a supplier lien pursuant to N.Y. Lien Law §§ 70-71, and N.Y. State Finance Law § 137, requiring performance bonds for public works projects in New York State such as the Erie County Project. UBU also alleges that the Delaware Court Action represents a form of retaliation by Plaintiff on account of the termination in late October 2016 by UBU shareholders and investors of UBU's founder and former CEO, Mark Nicholls, the son of Sid Nicholls who is Plaintiff's sole owner and CEO. The Delaware Court Action also includes UBU's $6.6 million counter-claim which is predicted on allegations of fraudulent cancellation of the Supply Agreement and mismanagement of UBU by Mark Nicholls

while UBU's CEO, and Sid Nicholls, who UBU alleges aided and abetted Mark Nicholls's mismanagement of UBU, constituting tortious interference with UBU's contractual relations. According to Plaintiff, Plaintiff and UBU, during the period of the non-payments accrued by UBU, engaged in a course of conduct whereby payments by UBU to Plaintiff would be credited to the oldest, outstanding accounts, *i.e.*, invoices, first and then to other balances.

In a related matter commenced March 13, 2017 in Delaware Chancery Court, UBU has sued Plaintiff and Mark Nicholls as an aider and abettor, alleging breach of corporate loyalty, waste and diversion of assets including allegations of fraud in connection with the creation, *i.e.*, back-dating, and cancellation of the Supply Agreement which was required to obtain a large capital infusion to UBU ("the Chancery Court Action"). The Chancery Court Action and the Delaware Court Action have been consolidated. According to Plaintiff, UBU recently admitted in discovery an inability to pay its current obligations. The instant action seeks performance of Defendant's surety bond, issued July 12, 2016, securing any amounts owed to Plaintiff for Plaintiff's supply of material to UBU in connection with the Erie County Project up to $264,313.

Defendant's motion is premised on Defendant's assertion that UBU's alleged debt to Plaintiff for the turf supplied for the Erie County Project, which is the basis for Plaintiff's claim on Defendant's bond, will be determined in the Delaware Court Action albeit as a component of Plaintiff's numerous other claims arising on the other projects which are the subject of the Delaware Court Action, and if that claim is decided against Plaintiff, it will moot the instant action under collateral estoppel as Plaintiff is a party to the Delaware Court Action and will be thus bound by the Delaware court's

determination.  *See* Dkt. 14-7 at 3.  Defendant therefore contends Plaintiff will not be

prejudiced by a stay of this action whereas Defendant will be burdened by significant

and potentially unnecessary litigation costs in this case if Defendant's request for stay is

not granted.  *See* Dkt 14-7 at 4-6.  Defendant also points to the fact that a stay will

obviate any possibility of inconsistent results should the Delaware court find UBU does

not owe anything to Plaintiff in connection with the Erie County Project, but on the same

evidence this court may conceivably find it does.  Dkt. 14-7 at 4-5.  Defendant does not

explicitly agree to be bound by an adverse determination in the Delaware Court Action,

and argues that any additional delay associated with the litigation of Defendant's "surety

defenses" in this action, presumably including late notice of Plaintiff's claim, *see*

Defendant's Answer, Dkt. 3 ¶ 48, can be remedied by an award of interest.  *See* Dkt.

14-7 at 5 (citing caselaw).  Defendant also contends a stay will avoid unnecessarily

burdening third-parties, such as Erie County officials, with duplication of discovery in

both actions, Dkt. 14-7 at 5, and that avoidance of the risk of inconsistent verdicts and

potential duplicative discovery serves the public's interest.  Dkt. 14-7 at 7.

In opposition, Plaintiff argues that delaying this action in favor of the Delaware

Court Action is inconsistent with Plaintiff's right to enforce Defendant's bond protecting

Plaintiff as Defendant's supplier for amounts due Plaintiff in connection with the Erie

County Project as contemplated by N.Y. State Fin. Law § 137 (McKinney's 2011), Dkt.

16 at 6-7, and will result in severe prejudice to Plaintiff as Defendant has admitted in the

Delaware Court Action it is unable to pay current debts,[1] and delaying Plaintiff's

recovery in this action will render collection of a judgment in Plaintiff's favor in the

---

[1]  To date, the court has not been advised UBU has filed for or been placed in bankruptcy.

Delaware Court Action problematic assuming Plaintiff prevails. *Id.* (citing *Chittenden Lumber Co. v. Silberblatt & Lasker*, 43 N.E.2d 459, 462 (N.Y. 1942) (surety's liability on § 137 bond not contingent on existence of a fund to which a supplier's lien may attach)). Although Plaintiff acknowledges an adverse determination in the Delaware Court Action on whether Defendant owes Plaintiff for any unpaid balances due on the Erie County Project may, under collateral estoppel, bind Plaintiff in this action, Plaintiff also points to the fact that if Plaintiff is successful on this issue, such determination will not bind Defendant as Defendant is not a party to the Delaware Court Action. *See* Dkt. 16 at 8. Plaintiff also maintains awaiting the outcome of the Delaware Court Action will not resolve the instant case as there is not an identity of all issues in that Defendant may choose to assert here several surety defenses (*e.g.,* Plaintiff is not a proper party, Dkt. 3 ¶ 41; Plaintiff failed to give proper notice of claim, Dkt. 3 ¶ 48) not presented in the Delaware Court Action. Dkt. 16 at 9-10 (citing *Herbstein v. Bruetman*, 743 F.Supp. 184, 190 (S.D.N.Y. 1990) (stay of an action pending outcome of parallel litigation presumes such litigation will be "an adequate vehicle for resolution of the issues between the parties" (quoting *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 28 (1983)))). *See also American Stock Exchange, LLC v. Towergate Consulting Ltd.*, 2003 WL 21692814, at *3 (S.D.N.Y. July 21, 2003) (denying stay based on absence of congruity of parties and issues in two pending actions).

Generally a stay will be granted where, in the discretion of the court, the interests of justice require. *See Travelers Casualty & Surety Company of America v. DiPizio Construction Company, Inc.*, 103 F.Supp.3d 366, 369 (W.D.N.Y. 2015) (citing cases) (denying stay where plaintiff's indemnification claims not identical to defendant's claims

being litigated in state court).  In deciding whether to grant a stay, courts consider "(1) the private interests of plaintiffs proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  *DiPizio*, 103 F.Supp.3d at 370 (citing *Kappel v. Comfort*, 914 F.Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993))).  Additionally, "'the proponent of a stay bears the burden of establishing its need.'"  *DiPizio*, 103 F.Supp.3d at 370 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).  Here, Defendant has not met its burden to establish that a stay of this action should be granted pending the outcome of the Delaware Court Action.

First, there is insufficient identicality of claims between the Delaware Court Action and the instant action in that in this case Defendant raises several surety defenses that will not be resolved in the Delaware Court Action, and granting a stay usually occurs where deference to another pending action will result in a complete resolution of the litigation for which a stay is requested.  *See DiPizio*, 103 F.Supp.3d at 370; *Herbstein*, 743 F.Supp. at 190.  Second, there are numerous allegations and counter-allegations of corporate malfeasance involved in the Delaware Court Action creating a distinct likelihood, if not certainty, that discovery and motion practice in the Delaware Court Action will be protracted and resolution, including Plaintiff's claim with respect to the Erie County Project, therefore substantially delayed.  Thus, Plaintiff's potential entitlement to recovery and payment as a result of a favorable determination in this action will be prejudiced if this action is stayed in deference to the Delaware Court

Action.  *See American Steamship Owners Mutual Protection and Indemnity Association,*

*Inc. v. LaFarge North American, Inc.*, 474 F.Supp.2d 474, 482 (S.D.N.Y. 2007) (in

considering factors, relevant to whether to grant a stay "principal objective being

avoidance of unfair prejudice") (citing caselaw).  The public policy expressly underlying

§ 137 favoring prompt and full payment by a surety of material suppliers to public works

projects for unpaid balances due from the surety's principal, *see Chittenden Lumber*

*Co.*, 43 N.E.2d at 1374; *State Bank of Albany v. Dan-Bar Contracting Co.*, 199 N.Y.S.2d

309, 313 (S. Ct. Albany Cty 1960) (purpose of § 137 bond is to protect providers of

labor and material suppliers on public works projects against risk of non-payment by

general contractor as a principal particularly where balance due is insufficient to cover

such claims under Lien Law), will thus be negated by a stay of this action.  That Plaintiff

has elected to prove the alleged underlying debt owed to it by UBU in the Delaware

Court Action, as well as Defendant in this action on the Erie County Project is therefore

irrelevant to whether a stay of the instant action will significantly prejudice Plaintiff's

interests.  Plaintiff's claim against Defendant need not abide the outcome of the

Delaware Court Action.  Defendant's interests in a stay are less palpable given that

Defendant is not a party to the Delaware Court Action and in the event Plaintiff prevails

in the Delaware Court Action, Defendant would be entitled to relitigate the question of

the principal, UBU's, alleged prior payment as a surety defense in this action.  *See*

*Durable Group, Inc. v. De Benedetto*, 444 N.Y.S.2d 662, 663 (1st Dep't 1981) (surety

"entitled to assert any defenses or counterclaims . . . available to principal").  The court's

interest in early resolution of a case where parallel litigation will not necessarily resolve

entirely the pending case also points away from a stay in this case.  *See DiPizio*, 103

F.Supp.3d at 369.  The interests of non-parties is a neutral factor in this case.  To the extent that Erie County representatives may be needed as witnesses on any fact questions that cannot be stipulated to in both actions their involvement in both actions cannot be avoided.  As to the public interest, prompt resolution of a material supplier's right to payment under a surety bond issued pursuant to § 137 on a local public works project also supports denial of Defendant's request.  Additionally, the court finds that as the merits of Plaintiff's claim will eventually turn on comparison of Plaintiff's and Defendant's business records with respect to the issuance of invoices and receipt of payments between Plaintiff and UBU, the risk of inconsistent judicial determinations is minimal.  Defendant concedes as much.  *See* Defendant's First Affirmative Defense, Dkt. 3 ¶ 40 ("Plaintiff's claims are barred . . . by documentary evidence.").  In sum, the issues in the Delaware Court Action will not necessarily result in a resolution of the instant case, the prejudice to Plaintiff outweighs any prejudice flowing to Defendant in the absence of a stay, third-parties will not be significantly affected whether a stay is granted or not, the court's interest in an early resolution of the instant case is self-evident, that the issue of payment will likely turn on admissible business records kept by Plaintiff and UBU minimizes the risk of inconsistent outcomes, and the public interest in prompt vindication of Plaintiff's rights under the § 137 surety bond will be served if Defendant's stay request is denied and the instant action proceeds.

**CONCLUSION**

Based on the foregoing, Defendant's motion, Dkt. 14, is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  November 30, 2017
            Buffalo, New York